## No. 9128.

### BOARD OF COUNCILMEN OF BATON ROUGE VS. C. CRÉMONINI.

Under the ordinance of the city of Baton Rouge, authorizing the prosecution and punishment of the owners of houses, after conviction of their tenants for keeping disorderly houses therein, and due notification thereof to such owners or their agents, no prosecution can be maintained against such owners, before conviction of their tenants and previous to notice of the same to them.

The council of a municipal corporation can provide modes of punishment of offenders against its police ordinances, by general ordinances affecting all persons alike, but it is powerless to single out any individual and denounce his trade, occupation or conduct.

Proceedings against offenders against municipal ordinances must be instituted before a competent tribunal—contradictorily with the accused—and not *exparte* by resolutions of the council.

An appeal from a mayor's court will not be dismissed for irregularities and deficiencies in the transcript, if the latter contains the ordinance on which the judgment complained was predicated. Such defects cannot be attributed to the fault of the appellant.

APPEAL from the Mayor's Court of Baton Rouge.
*Booth*, J.

*C. C. Bird*, City Attorney, for Plaintiff and Appellee.

*Knox & Laycock* for Defendant and Appellant.

### MOTION TO DISMISS.

The opinion of the Court was delivered by

POCHÉ, J. Defendant has appealed from a sentence of the mayor condemning him to pay a fine of $25, or in default, to an imprisonment of fifteen days.

Appellees urge their motion to dismiss on the ground that the transcript does not contain the ordinance under which the defendant was sentenced. Proceedings intended to secure a revision of this judgment are now before us for the third time.

In March of last year, we dismissed the suspensive appeal taken therefrom by the defendant, on the ground that the transcript did not contain the city ordinance or resolution of the council on which the judgment apparently rested. 35 A. 367.

Subsequently, we issued a mandamus compelling the mayor to grant to the defendant a devolutive appeal from the judgment complained of.

The present appeal has been returned in obedience to our writ, and the board of councilmen of which the mayor himself is a component part, complains of the insufficiency of the transcript. With what grace can the mayor, whose duty it was both under the law and under our writ to return a complete transcript, pretend to attribute the fault to appellant?

In point of fact the transcript does contain the city ordinances, the resolution of the council and the petition of citizens, on which the mayor founded his proceedings, and rested his judgment against the defendant. The pith of appellee's complaint is that those documents had not been introduced in evidence or filed in the trial before the mayor's court. If it be so, the whole proceeding was irregular and oppressive. But, be that as it may, the documents in question were called for in our writ of mandamus, and are so certified by the mayor. As we remarked in the opinion dismissing the suspensive appeal, we cannot require as full and complete transcripts from mayor's courts, as we exact, according to law, from courts of record; as this transcript furnishes the ordinance and other documents which form the basis of the prosecution instituted against the defendant, and as the laches of the mayor in the confection of the transcript cannot be possibly attributed to the appellant, it becomes our duty to review the proceedings, which were predicated on the documents which are now before us. The motion to dismiss is, therefore, denied. Borde vs. Erskine, 33 A. 873.

---

### ON THE MERITS.

The appeal involves the investigation of the alleged illegality of a fine or penalty imposed by a municipal corporation, and it falls under our jurisdiction irrespective of the amount involved in the contestation. Cons. art. 81.

The charge, under which the defendant was punished, was for "setting at defiance and refusing to comply with a resolution of the city council prohibiting him from renting a certain house to women of lewd and abandoned conduct."

The record shows that, in furtherance of a petition of several citizens, the city council adopted a resolution on the 5th of September, 1882, declaring that a certain house on North street, occupied by lewd women, was a nuisance, and directing that said women be notified to remove from said premises and to abandon their purpose of keeping thereon a disorderly house.

The petition of citizens and the resolution were both silent as to Crémonini, the defendant herein, and the owner of the house in question.

Hence, there was no resolution of the council prohibiting him from renting his house for the purpose denounced in the petition of citizens.

It follows, therefore, that the notice communicated to him by the chief of police, under the mayor's directions, had no foundation in law, and could bear no legal effect.

The city ordinance, on the subject of disorderly houses, authorizes the prosecution and punishment of offenders, by fine or imprisonment, and by closing their establishments.

The ordinance further authorizes the prosecution and punishment, by fine or imprisonment, of the owners of such houses, after the conviction of the inmates thereof, as keepers of disorderly houses, and after notification of such conviction to said owners or their agents.

We understand that the proceedings, thus authorized, must be instituted before the mayor's court or other competent tribunal, and contradictorily with the accused.

In this case, the persons who are denounced by the citizens in their petition, as keepers of a disorderly house, had not been prosecuted and had not been judicially condemned when the defendant, Crémonini, was arrested and traduced before the mayor's court. Hence, it follows that there was no foundation, such as is imperatively required by the city ordinance, for his prosecution. We, therefore, hold that the penalty imposed against him was absolutely unauthorized and is glaringly illegal.

The city council has the undoubted power to prescribe modes of punishment for the violation of its ordinances and we understand that such power was exercised in adopting the ordinance as to disorderly houses, to which we have hereinabove referred.

But the council can legally pass no ordinance which proposes to single out one individual and to specially prohibit him from doing any act, under penalty of fine or imprisonment. No one can be condemned without a hearing.

The oppression of this defendant, by the proceedings now under consideration, is even more palpable than the outrageous prosecution, so severely denounced by our predecessors, in the case of Municipality of New Orleans vs. Blineau, 3 A. 688.

We abstain from any expression of opinion touching the constitutionality or legality of the ordinance on disorderly houses, in so far as it purports to affect the owners of property which may be occupied by tenants keeping thereon disorderly houses.

Admitting its full legality and binding effect for the purposes of this case, we find that the mode of proceeding, which it prescribes, has not been followed in the premises by the mayor; that the prosecution

against this defendant had not been preceded by a judicial condemnation of his tenants and that, necessarily, he had not been previously notified of such action; all of which was indispensable to a legal prosecution against him.

The judgment or sentence appealed from is, therefore, annulled, avoided and reversed, and the prosecution against the defendant is, therefore, dismissed at appellee's costs of the trial below and of the present appeal.